UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cr-00188-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NATHANIEL GRAHAM, A/K/A NASTY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant's Motion for Compassionate Release, (Doc. No. 1192), following remand from the Fourth Circuit. United States v. Graham, No. 21-6613, 2022 WL 1172169 (4th Cir. Apr. 20, 2022); (Doc. No. 1273). Now that the mandate has issued, (Doc. No. 1275), this matter is ripe for ruling. For the reasons that follow, Defendant's Motion is DENIED.

**I.      Background**

Defendant was one of over two-dozen defendants charged in a thirty-eight count Superseding Bill of Indictment, (Doc. No. 280), filed on October 17, 2012. Defendant was tried before a jury and convicted on May 13, 2013 of conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d) ("Count 1") and conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) ("Count 14"). (Doc. Nos. 494; 724, p. 1). Count 1 originates from Defendant's pattern of criminal activity in connection with the United Blood Nation ("UBN") from 2007 through 2012. (Doc. No. 724, p. 12). Count 14 stems from Defendant's conspiracy to have an inmate murdered for taking a fellow gang member's cell phone while incarcerated. Id. Specifically, on or about June 27, 2011, Defendant participated in a conference call with other

1

UBN members in which "the parties involved agreed that [the victim] had to die," and was subsequently assaulted by a co-conspirator while in Bertie Correctional Institute with a razor blade. Id. Defendant was sentenced to 240-months' imprisonment on Count 1, and 120-months' imprisonment on Count 14 to run concurrently; however, the federal sentences were to be run consecutively to Defendant's Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury conviction in Chowan County, North Carolina. (Doc. No. 837). Further, Defendant was sentenced to concurrent terms of three years of supervised release. Id.

At the time Defendant filed his Motion, he was imprisoned at USP Lewisburg, a Bureau of Prisons ("BOP") facility in Pennsylvania. (Doc. No. 1192, p. 3). As of the date of this Order, Defendant is now currently incarcerated at FCI Gilmer in West Virginia with a projected release date of July 29, 2033. (Doc. No. 1196-1, p. 1).[1] On April 20, 2022, the Fourth Circuit vacated and remanded this matter for reconsideration based on case law that was unavailable to this Court at the time of its original Order. (Doc. No. 1273). Specifically, the Fourth Circuit indicated this Court's original ruling failed to indicate the undersigned considered all of Defendant's arguments in denying his motion. Following remand, the Court now reviews and reconsiders all arguments presented in Defendant's original motion.

## II. Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

Following the completion of just over twenty percent of his federal sentence for violent, gang-related conduct, Defendant petitions the Court for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking either a sentence reduction or to be released to home confinement. (Doc. No. 1192, p. 17). Generally, federal courts "may not modify a term of

---

[1] See https://www.bop.gov/inmateloc/, visited 5/23/2022.

imprisonment once it has been imposed." Dillon v. United States, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)). However, the Fourth Circuit has stated that "[t]he COVID-19 pandemic has understandably prompted an increasing number of inmates to file motions for compassionate release. . . . authoriz[ing] district courts to reduce terms of imprisonment upon finding 'extraordinary and compelling reasons.'" United States v. High, 997 F.3d 181, 185 (4th Cir. 2021). Section 3582(c)(1)(A) was amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, allowing defendants to seek such reductions "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A)(i).

Therefore, in order to grant compassionate release, this Court must: (1) determine whether extraordinary and compelling reasons warrant such a reduction; (2) determine whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (3) consider the factors set forth in § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022), United States v. McCoy, 981 F.3d 271, 280 (4th Cir. 2020), United States v. Kibble, 992 F.3d 326, 330 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021) (per curiam) (noting the district court's consideration of § 3553(a) factors should be "consistent with the applicable policy statements issued by the Sentencing Commission." (internal quotations omitted)). As the Sentencing Commission has lacked a quorum since Congress enacted the First Step Act, and thereby has not updated U.S.S.G. § 1B1.13, the Guidelines "remain[ ] helpful guidance even when motions are

filed by defendants."[2] McCoy, 981 F.3d at 282 n.7. Nonetheless, the Court should independently determine whether "extraordinary and compelling reasons" warrant a sentence reduction following consideration of § 3553(a) sentencing factors "to the extent that they are applicable." Hargrove, 30 F.4th at 195; see also McCoy, 981 F.3d at 284 (stating that "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" (citing United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020); emphasis in original)). In arriving at a decision in this matter, the Court need not acknowledge and address each of defendant's arguments, as there are instances where "minimal explanation suffices." High, 997 F.3d at 189 (internal quotations omitted); see also Chavez-Meza v. United States, 138 S. Ct. 1959, 1965 (2018). The Court will examine each of these procedural steps in turn.

### A. Exhaustion of Administrative Remedies

Here, the Government concedes that Defendant made a request to the BOP for compassionate release, and it was subsequently denied. (Doc. No. 1196, p. 2). Therefore, it is clear from the record that Defendant exhausted his administrative remedies in compliance with § 3582(c)(1)(A). However, the Court recognizes that Defendant's conditions of confinement have materially changed since he has been transferred to FCI Gilmer. See United States v. Barnes, No. 20-7730, 2022 WL 152417, at *2 (4th Cir. Jan. 18, 2022) (recognizing that the defendant's "condition and circumstances have changed materially since the court denied his motion," and concluding that the defendant "should have the opportunity to argue why he is entitled to compassionate release based on his current condition and circumstances.").

---

[2] The Fourth Circuit has recognized that "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)" because the policy statement was adopted prior to the passage of the First Step Act, which only provided guidance for BOP-filed motions. McCoy, 981 F.3d at 282.

4

Case 3:12-cr-00188-FDW-DSC   Document 1276   Filed 05/23/22   Page 4 of 12

In an unpublished decision from the Fourth Circuit, the court noted that since the defendant "requested a sentence reduction, not just removal from his then-current place of incarceration," it would "still be possible that [he] could obtain the relief he requested." United States v. Spicer, No. 21-7739, 2022 WL 910907, at *1 n.* (4th Cir. Mar. 29, 2022) (per curiam). Therefore, while the Defendant's arguments pertaining to the conditions of USP Lewisburg as a basis for compassionate release are moot, the Court finds it prudent to continue the analysis to the merits of Defendant's ancillary arguments in favor of relief. See United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018) ("A case becomes moot only when it is *impossible* for a court to grant *any* effectual relief.") (internal case citations and quotations omitted; emphasis in original)).

B.    **Extraordinary and Compelling Reasons**

Defendant contends there are "extraordinary and compelling reasons" that warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). While the statute fails to define what qualifies as extraordinary and compelling reasons, the Sentencing Commission provides persuasive guidance. U.S.S.G. § 1B1.13.[3] The Guidelines note various considerations that may justify a sentence reduction, including if Defendant is suffering from a serious medical condition, is at an advanced age, certain family circumstances, and other reasons "[a]s determined by the Director of the [BOP]; however, "rehabilitation, by itself, is not an extraordinary and compelling reason for a reduction." U.S.S.G. § 1B1.13, cmt. n.1, 3. While none of the circumstances described

---

[3] The Guidelines delineate subdivision (2)—"the defendant is not a danger to the safety of any other person or to the community"—as a prerequisite for the Court imposing a sentence reduction based on the applicable policy statements and commentary. However, § 3582(c)(1)(A) only requires this dangerousness finding when making a determination pursuant to subsection (ii). Nonetheless, as McCoy instructs, the gap in revisions to the Guidelines following the enactment of the First Step Act "remains helpful guidance," however, they are not binding. 981 F.3d at 282 n.7; see also United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating "the Sentencing Commission's statements may inform a district court's discretion for compassionate release motions, but they are not binding.") (cleaned up).

5

by the Sentencing Commission in their policy statements are applicable to Defendant's allegations, the Court will nonetheless consider "*any* [other] extraordinary and compelling reason for release that a defendant might raise." McCoy, 981 F.3d at 284 (emphasis in original).

In the case at hand, Defendant asserts he has "been sentenced to death for two non-violent offenses," primarily due to allegations of poor prison conditions and the risk of contracting the COVID-19 virus while incarcerated. See generally (Doc. No. 1192). Further, while providing no evidence of any pre-existing condition which would make him more susceptible to contracting or having an adverse reaction to COVID-19, Defendant contends that "it is not a question of whether one has pre-existing conditions but a question of whether the extraordinary and compelling reasons are compelling enough to warrant the relief sought in individual cases." Id. at p. 14. The Court disagrees.

The Fourth Circuit has held there is no bright-line rule where conditions not listed at the CDC's highest risk category can "never qualify as extraordinary and compelling reasons to reduce a sentence." Hargrove, 30 F.4th at 195. In Hargrove, the Fourth Circuit noted that compassionate release motions should "balance the severity of the inmate's personal circumstances . . . against the needs for incarceration," under the totality of the relevant circumstances, and by applying a standard that requires inmates to prove: (1) a *particularized susceptibility* to COVID-19, and (2) a *particularized risk* of contracting the disease at his prison facility. Id. at 196-97 (emphasis added). However, Defendant proffers no evidence of his individualized susceptibility of contracting COVID-19 beyond generalized allegations. Since Defendant has not articulated any risk or condition with particularity, his claims fail to overcome the basic threshold requirement Hargrove sets forth. See also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence

6

of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Colleton, No. 21-6015, 2022 WL 18500 at *1 (4th Cir. Jan. 3, 2022) (affirming the district court's determination that general complaints of COVID-19 being particularly serious and highly communicable in the prison context was insufficient to demonstrate an extraordinary and compelling reason for release); United States v. Hood, No. 5:18-CR-00005-KDB, 2020 WL 2091070, at *3 (W.D.N.C. Apr. 30, 2020) ("Without a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility, the Court will not grant a motion for compassionate release based on COVID-19 concerns.").

Further undermining Defendant's argument is the fact that he has been transferred from the two facilities he focuses the majority of his complaints on in his Motion. While the Court does not foreclose Defendant from future filings based on concerns as to his current location, there is nothing within the record describing Defendant's particularized risk of contracting the disease at his new prison facility. Therefore, as it relates to Defendant's personal circumstances, he has produced no particularized evidence which would allow this Court to weigh against the needs for incarceration. The Court also concludes Defendant has failed to carry his burden to sufficiently establish that the *combined* impact of Defendant's underlying health conditions (of which he describes none), the threat of the COVID-19 pandemic, and the conditions of his confinement within the BOP system warrants a sentence reduction under § 3582(c)(1)(A)(i).[4]

---

[4] See e.g., Kibble, 992 F.3d at 333–34 (Gregory, C.J., concurring) ("Here, Mr. Kibble identified three circumstances that, collectively, qualified as extraordinary and compelling: (1) the uncontrolled spread of COVID-19 at FCI Elkton, (2) his tricuspid atresia, and (3) his non-alcohol related cirrhosis of the liver. The district court agreed and so found. At the time of Mr. Kibble's motion, nearly 25% of Elkton's population had contracted COVID-19; nine inmates had

7

Case 3:12-cr-00188-FDW-DSC   Document 1276   Filed 05/23/22   Page 7 of 12

To the extent Defendant contends any sentencing disparity constitutes "extraordinary and compelling reasons" for release, the Court disagrees. The Fourth Circuit has recognized that sentencing disparities may constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A). McCoy, 981 F.3d at 285. However, the sentencing disparities discussed in McCoy resulted from statutory changes during the defendant's term of incarceration. Id. While this Court is cognizant that a disparate sentence among co-defendants *may* allow for relief, such a reduction would be inappropriate based on the record and arguments presented in the case at hand. Defendant fails to identify any particular co-defendant or articulate any reason whatsoever, much less an extraordinary or compelling reason, for any alleged disparity justifying relief. Therefore, following a complete review of any and all extraordinary and compelling reasons Defendant sets forth, the Court concludes Defendant has failed to meet his burden of establishing such relief is warranted.

### C.   18 U.S.C. § 3553(a) Factors

As the Court has already determined Defendant has not met his burden of proving extraordinary and compelling reasons warrant a sentence reduction, nor that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission, it will nonetheless balance the § 3553(a) factors presented by Defendant in his Motion. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the Court considers

---

died as a result. The ACLU of Ohio and the Ohio Justice & Policy Center had named FCI Elkton as a defendant in a class action suit challenging the facility's conditions of confinement during the pandemic. And, at the time of Mr. Kibble's motion, Elkton was subject to a preliminary injunction aimed at correcting the facility's mismanagement. See Wilson v. Williams, 455 F. Supp. 3d 467, (N.D. Ohio 2020), vacated by Wilson v. Williams, 961 F.3d 829, 833 (6th Cir. 2020). This combination of factors rightly gave rise to the extraordinary and compelling circumstances animating this case."). In contrast, Defendant here has failed to provide a sufficient combination of factors, supported by the record, to support a finding of extraordinary and compelling reasons.

8

Case 3:12-cr-00188-FDW-DSC   Document 1276   Filed 05/23/22   Page 8 of 12

"the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need to avoid unwarranted sentence disparities;" and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). After considering the record and arguments presented, and to the extent the § 3553(a) sentencing factors are applicable, the Court denies any sentence reduction.

Defendant provides a blanket list of reasons why the § 3553(a) factors support a sentence reduction in his case, including: (1) reassertions of his prior arguments regarding poor prison conditions, the impact of COVID-19, and his undescribed "multiple vulnerabilities" that could lead to his death should he contract the virus; (2) his "extensive programming" and self-proclaimed rehabilitative record; (3) his "relatively young age" at the time of his offenses and the time in which he has already served; (4) his community support; (5) the alleged sentencing disparity between he and his co-defendants; and (6) alleging having only one infraction while in prison. (Doc. No. 1192, pp. 12-17). The Court addressed some of these arguments above in considering whether extraordinary and compelling reasons exist for a sentence reduction. Given the Fourth Circuit's directive on remand, the Court concludes that to the extent these arguments also apply to the consideration of applicable §3553(a) factors—when considered for this Defendant under this record—they fail to support a reduction in the sentence as originally imposed.

First, Defendant's arguments in his original motion regarding prison conditions related to his previous place of imprisonment, as Defendant has since been transferred. There is no evidence before the Court tending to show Defendant's current prison conditions provide a factual or legal basis for a sentence reduction under this record, and the Court's role is not to micromanage the

9

BOP's regulations as it relates to the COVID-19 virus. Turner v. Safley, 482 U.S. 78, 89 (1987) (holding that prison regulations will be upheld if they are "reasonably related to legitimate penological interests."). This argument is therefore without merit; however, the Court's ruling herein is without prejudice to any future motion for a sentence reduction that might provide new argument and evidence.

Second, while the record does not contain concrete evidence of Defendant's post-incarceration conduct, including his programming, rehabilitative efforts, and lack of infractions, the Court acknowledges Defendant has provided evidence of strong family and community support. This family support, however, is insufficient under this record for this Defendant to warrant a reduction in sentence. Indeed, the Court commends Defendant for his successful participation in programs while in prison, and understands he was relatively youthful at the time of his offenses; however, the completion of these programs is not remarkable given the length of time Defendant has been incarcerated. See United States v. High, 997 F.3d 181, 190 (4th Cir. 2021) (recognizing "[w]hile these are certainly positive factors, they are much more similar to the various educational courses Chavez-Meza had taken in prison than to the exceptional post-sentencing conduct of the defendants in Martin and McDonald." (citing Chavez-Meza, 138 S. Ct. at 1967; United States v. Martin, 916 F.3d 389, 396 (4th Cir. 2019); United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021)).

Notwithstanding the argument and evidence regarding Defendant's post-sentencing conduct, the Court cannot turn a blind eye to the fact that Defendant, *while incarcerated* at the North Carolina Department of Corrections for a violent assault, coordinated gang-related homicides of fellow inmates for incidents as trivial as another inmate taking a phone from a

10

member of the UBN. (Doc. No. 724, p. 17). This conduct demonstrates that incarceration has not previously deterred Defendant's conduct and counsels against a sentence reduction. Further, under Count 1, Defendant was convicted of multiple overt acts establishing a pattern of racketeering activity, including murder, bribery, drug distribution, and robbery. Id. at p. 12. The nature and circumstances of these offenses display an utter disregard for human life, and there is no evidence before this Court that the public would be safe with Defendant back out on the streets.

Defendant, aged 33, has been incarcerated since the mid-2000s on a violent felony offense from Chowan County. Id. at pp. 24-25. Even at his young age when first incarcerated, Defendant accumulated sufficient Criminal History points to be adjudicated as a Criminal History category VI – the highest possible category under the federal sentencing guidelines. Id. at p. 25. In addition to his federal convictions, Defendant has been convicted of simple assault, assault on a government official, resisting a public officer, maintaining a vehicle or dwelling to keep or sell controlled substances, possession of drug paraphernalia, possession of cocaine, assault inflicting serious injury, and two counts of assault with a deadly weapon inflicting serious injury, in addition to the assault with a deadly weapon with intent to kill inflicting serious injury conviction for which he served a State-prison stint. Id. at pp. 23-25. Upon sentencing this Defendant, the Court even noted that Defendant was "involved in very dangerous gang activity, violent gang activity." (Doc. No. 922, p. 9). As such, Defendant's history and characteristics, coupled with the nature and circumstances of the instant offenses he is incarcerated for, further weigh against his release.

Lastly, Defendant contends that there were "co-defendants who received a substantially lower sentence" than he did. The Court agrees. Nearly 30 of Defendant's co-gang-members were indicted, many of whom plead guilty, some of whom were convicted at trial, and *none* of whom

had identical involvement or criminal history characteristics. The beauty of the Sentencing Guidelines is that they are advisory, allowing courts to provide individualized determinations when handing down "particular sentences in response to differing sets of facts." United States v. Booker, 543 U.S. 220, 221 (2005). Defendant does not specify which of his dozens of co-defendants he is specifically referring to in his Motion, and he does not articulate any factual or legal arguments illustrating why such an alleged sentencing disparity is unwarranted. Therefore, the Court does not find Defendant's sentencing disparity argument sufficiently persuasive to overcome his specific history and characteristics, as well as the egregious nature and circumstances of his offense conduct. Therefore, even if Defendant had met his burden of proving extraordinary and compelling reasons warranting a sentence reduction, and that such a reduction was consistent with the applicable policy statements issued by the Sentencing Commission, the Court would *still* deny Defendant's Motion for Compassionate Release after a complete review of the record, parties' arguments, and all relevant factors under 18 U.S.C. § 3553(a).

### III. Conclusion

For the reasons above, IT IS THEREFORE ORDERED that Defendant's Motion for Compassionate Release, (Doc. No. 1192) is DENIED.

IT IS SO ORDERED.

Signed: May 23, 2022

Frank D. Whitney
United States District Judge